**Defendants' Exhibit C**
Fairfield Hills Hospital Medical Records Excerpts Brett Bolmer 1981, 1982, 1985

FAIRFIELD HILLS HOSPITAL

## PREVIOUS PSYCHIATRIC HOSPITALIZATIONS

NAME OF PATIENT _____ BRET BOLMER _____    CASE NUMBER _____ 063,053 _____

DATE OF BIRTH _____ 6/17/60 _____

| NAME OF HOSPITAL | ADMISSION DATE | DISCHARGE DATE | DIAGNOSIS (PSYCHIATRIC) |
|---|---|---|---|
| FHH | 7/10/81 | 7/10/81 | ADJUSTMENT DISORDER WITH DEPRESSED MOOD |
| FHH | 2/6/82 | 3/11/82 | INTERMITTENT EXPLOSIVE DISORDER ALCOHOL ABUSE |
| FHH | 10/5/85 | 10/7/85 | Adjustment disorder with depressed mood; alcohol abuse, continuous; antisocial personality disorder. |

em/ms

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

FAIRFIELD HILLS HOSPITAL

Clinical Summary

Case No.  063,053           Name  BRET BOLMER                Page  1

## D A T A   B A S E

### ADMISSION & CERTIFICATION NOTE

<u>JULY 10, 1981</u>:  This is a 21 year old, white, male, single, admitted
on a 15 Day Physician's Certificate from Danbury Hospital by Dr.
Elliot.  The Physician's Certificate stated patient is going to
commit suicide.  Patient is very agitated and shouting that he wanted
to die and became violent so that 4 males and 3 females controlled him
and restrained him to bed shouting foul language.  Very upset about
his girlfriend with the belief she cheated him.

  <u>ON ADMISSION</u>:  Very uncooperative.

  <u>PHYSICAL EXAMINATION</u>:  Uncooperative

  <u>TENTATIVE WORKING DIAGNOSIS</u>:  AXIS  I:  296.50 Major Depression
                                    AXIS  II: 799.90 Diagnosis Deferred

  <u>INITIAL TREATMENT PLAN</u>:  Valium 10 mg IM Stat

  <u>DISCHARGE PLANNING</u>:  Discharge home after evaluation and treatment
and after seen by psychiatrist and the team.

  <u>JUSTIFICATION FOR ADMISSION</u>:  Incapacitated by mental illness.
Level of functioning impaired to extent that patient is unable to
adequately care for self or be cared for in other than a psychiatric
hospital.

Patricia DeCastro, M.D.
Senior Physician

PD:ef


<u>JULY 10, 1981</u>:  The admission note in this case has been reviewed by
the undersigned.  Judith Harmon, Psychiatric Social Worker, has been
designated as responsible for coordinating the discharge planning.

  I have examined the patient and am in agreement that he is in
need of psychiatric evaluation on the basis that he is in need of
evaluation and treatment.

Salvatore Militano, M.D.
Staff Psychiatrist

SM:ef

<u>JULY 10, 1981 - DISCHARGE NOTE</u>:  Patient today discharged from the hospital.
                                      ef

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899a and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

FH-12-A

# FAIRFIELD HILLS HOSPITAL

CLINICAL SUMMARY

**Case No.** 063,053              **Name** Bret Bolmer              **PAGE** /

July 10, 1981 - DISCHARGE SUMMARY

### 1.   INITIAL PSYCHODIAGNOSTIC APPRAISAL
A.  Patient is a 21 year old white male, single, bouncer, lives with friends, brought in on a 15 day P.C. signed by Dr. Elliot of Danbury Hospital.  This is his first admission here at Fairfield Hills Hospital.

P.C. states that patient called Danbury Police Station saying he was going to kill himself.  The call was traced and the patient was picked up and brought to the hospital.  His girlfriend jilted him a few days ago.. Also attacked his mother's boyfriend with a chain saw.

Patient states he was depressed because he found his girlfriend cheating on him.  Denies suicidal ideations.  States he just wanted to seek help by talking to someone.  Doesn't want to hurt himself, and is worried about losing his job.  Denies suicidal ideations.

Patient is cooperative, oriented to the spheres X3.  Denies auditory hallucinations.  Denies drug abuse.  Admits to alcohol abuse.  Denies suicidal ideations.  States he is feeling better and wants to return to work.

B.  Etiology:  Is considered a socioeconomic one; his girl cheating on him and his drinking.

C.  Prognosis:  Is considered good.  A talk with his probation officer confirms this.

D.  Diagnosis:  Axis 1    309.00 Adjustment disorder with depressed mood.
                Axis 11   V71.09 No diagnosis.
                Physical: Deformity of left leg.

### 11.   COURSE IN HOSPITAL - Was considered uneventful.  Contact was made with the patient's probation officer and patient was released with the understanding that he was to see him on alternate days until his appointment with the Danbury Out-patient Clinic was started.  Patient was discharged on 7/10/81.

### 111.   FINAL PSYCHODIAGNOSTIC APPRAISAL
A.  Patient was not delusional or hallucinating.  Denied suicidal ideations at this time.  Was not considered a danger to himself and/or others.

B.  Etiology:  Is a socioeconomic one.

C.  Prognosis:  Is considered good.

D.  Final Diagnosis:  Axis 1    309.00 Adjustment disorder with depressed mood.
                      Axis 11   V71.09 No diagnosis.
                      Physical: Deformity of left foot.

### 1V.   TREATMENT RECOMMENDATIONS
Patient was referred to the Danbury out-patient clinic for follow-up care.

S. Militano, M.D.
Staff Psychiatrist

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2.  These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains.  A general authorization for the release of information is NOT sufficient for this purpose.

## FAIRFIELD HILLS HOSPITAL

NAME:   BRETT BOLMER

Address   EDEN HILL ROAD

NEWTOWN, CT.

Social Security Number:   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

Title XIX Number (Welfare):   UNKNOWN

Discharge Notification:   NONE

DATE ADMITTED:   2/6/82

Hospital Number: 063,053
Year Number:   2242

First Admission:
Readmission:
No. Prev. Adms to FHH: 1

Admission Legal Status: VOLUNTARY
Change to: Involuntary   Date: 2/16/82
Court Commitment

Date of Birth: 6/17/60

Birthplace:   CONNECTICUT

Age: 21   Sex:   MALE

Religion:   PROTESTANT

Father's Name:   NEWTORD

Mother's Name:   LORRAINE

Marital Status:   NEVER MARRIED

Name of Spouse:   ----

Military Service:   YES

U.S. Citizen:   YES

Birthplace: FAIRFIELD

Birthplace: NEWTOWN

CORRESPONDENT(S):   Name: LORRAINE BOLMER
   AND/OR   Address: EDEN HILL RD., NEWTOWN, CT.
CONSERVATOR   Telephone:

Relationship:   MOTHER

Name:
Address:
Telephone:

Relationship:

## PSYCHIATRIC DIAGNOSIS(ES)

Code # 303.91   1.   Alcohol dependence, continuous – Axis 1
   309.00   2.   Adjustment disorder with depressed mood – Axis 1
   V71.09   3.   No diagnosis – Axis 11

## PHYSICAL DIAGNOSIS(ES)

Code #_____   1. No diagnosis – Axis 111
   _____   2.
   _____   3.
   _____   4.

CHANGE OF DIAGNOSIS:

Date:   3/11/82

AXIS I:   312.34   INTERMITTENT EXPLOSIVE DISORDER
   305.02   ALCOHOL ABUSE
   AXIS II:   V71.09   NO DIAGNOSIS
Physician: PRIMLA FAZAL UD DIN, M.D.
   AXIS III:   DEFORMITY OF LEFT
   LEG POST ACCIDENT

4

DISCHARGE INFORMATION:

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these Federally records shall be transmitted to anyone else without written consent as authorization is provided under Connecticut General Statutes Chapters 899c and 368x and Federal Regulations 42 CFR S 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information shall be sufficient for this purpose.

Medical Examiner:

FAIRFIELD HILLS HOSPITAL

Clinical Summary

Case No.   063,053          Name   BRETT BOLMER          Page   1

## D A T A       B A S E

### ADMISSION & CERTIFICATION NOTE

<u>FEBRUARY 6, 1982</u> : This is a 21-year-old, white, male, who comes to
Fairfield Hills Hospital looking for voluntary admission to a Psychiatric
Geographic Unit.
     <u>PRESENT COMPLAINT:</u>    21-year-old, white, male with one prior admission
to Fairfield Hills Hospital six months ago. This admission states he has
recently broken up with his girlfriend and last night drank one quart of
Vodka, and a pint of brandy and then threatened to kill his girlfriend's
boyfriend. He also stated he wished that he bould buy a gun but states,
"they don't let me have a gun." He has a court appearance on 2/16/82. Has
been living with his mother but has constant problems with her.
     <u>ON ADMISSION:</u> Alert, oriented to the three spheres with alcohol on
breathe. His affect is agitated and depressed. He wishes he was dead and
also stated he would like to kill his girlfriend's new boyfriend. Intelligence
is average. Judgement and insight are intact.
     <u>PHYSICAL EXAMINATION</u> : BP: 150/110. (R) A sitting scar 2 lower extremities
scar (R) foot.
     <u>TENTATIVE WORKING DIAGNOSIS:</u>     AXIS I:     300.40  Dysthymic Disorder, severe
                                              II:     799.90  Diagnosis deferred
                                              III:            No diagnosis.
     <u>INITIAL TREATMENT PLAN</u> : Admit to Geographic Unit. 1:1 suicidal
precautions.
     <u>JUSTIFICATION FOR ADMISSION:</u> Need for psychiatric evaluation and/or
treatment. Patient is a danger to self and/or others. 1:1 for suicide.
     <u>DISCHARGE PLANNING:</u> 15 days to evaluate and re-stabilize patient's
emotional composure.

                                        *Richard Pope PA-c*
                                        RICHARD POPE, PA.C.
                                        PHYSICIANS' ASSISTANT CERTIFIED

RP/jp


<u>FEBRUARY 6, 1982</u> : The admission note and the Initial Treatment Plan in
this case has been reviewed by the undersigned. Miss Cecilie Courtright,
Psychiatric Social Work Resident, has been designated as responsible
for coordinating the discharge planning.

I have examined the patient and am in agreement as to his need for psychiatric
hospitalization on the basis of becoming violent and disruptive after getting
drunk. Feels disappointed and angry in response to loss of girlfriend.

                                        PRIMLA FAZAL UD DIN, M.D.
                                        SENIOR PHYSICIAN

PFD/jp

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

FAIRFIELD HILLS HOSPITAL

Clinical Summary

Case No.                       Name    BRETT BOLMER                       Page    2

## INTERVAL HISTORY

FEBRUARY 10, 1982 INFORMANTS:  Patient himself, deemed reliable; mother,
Lorraine Bolmer, Eden Hill Rd., Newtown, CT., telephone 426-5030; State
Police Officer, Richard Nesbitt, Brewster, N.Y. barracks, telephone (914)
279-6161; Probation Officer Hurley, telephone 797-4414.

REASON FOR ADMISSION:  This is a 21-year-old man who was admitted voluntarily
on 2/6/82.  He had broken up with his girlfriend who lives in Brewster, N.Y.,
afterwards drank a quart of vodka and broken into the girlfriend's family's
home and written on the walls with spray paint.  He was apprehended by s
policemen and taken to the Brewster barracks.  Officer Nesbitt requested him
to return home and come back to "straighten this matter out" in a day or two.
But after arriving in Newtown, he felt great anxiety and demanded to be taken
to Fairfield Hills.  He feels that "no one wants to talk to me these days"
and that his mother "just wants to see me put away, that's why she calls the
copes on me."   He was referring to his two previous arrests, one for going
after his sister's boyfriend with an axe and chainsaw, and the other for setting
a couch on fire, according to him, "accidentally."  He had one previous admission
to Fairfield Hills Hospital, on 7/10/81, for suicidal ideation, but was released
the same day.

HISTORY:   Patient was born in Danbury Hospital on 6/17/60 as the fourth child
of Nufer and Lorraine Bolmer.  His siblings are David, 24 (223-3257), a
student at Central Connecticut College; Gary, 23, who lives in California; Cheryl,
19, lives in Danbury, and William, 17, who lives with his mother in Newtown
and has had arthritis for the last five years.  Patient's birth was premature
by six weeks.  He walked at 15 months; his mother remembers no childhood problems.
At age 10, he had successful surgery on both feet.  He went through the Newtown
School system and graduated on 6/16/79.  He has a number of friends from high
school days.  He started drinking while in high school.  Since graduation, he
worked at a fairly great number of jobs - as many as 30, he stated - but had
"bad luck" and was often laid off or fired.  He was about to start a job with
Danbury Print and Litho where he could have used the printing skills he had
acquired in high school.  He has lived mostly with his mother.

His parents were divorced in 1973.  His father, a carpenter, lives now in
Southbury and was remarried to a much younger wife the day patient graduated
which, according to his mother, caused the boy great distress.  His mother,
a diabetic for 26 years, finds coping with her own problems and those of patient
and his younger arthritic brother exceedingly difficult.  She receives alimony.
According to her, patient mostly "lies around and does nothing" unless he fights with
his brother or drinks.  She feels he needs help but he did not follow-up her
appointment for him to the Danbury Mental Health Clinic.

According to patient's probation officer, Mr. Hurley, patient's home life is
"chaotic."  His first arrest, for criminal mischief (the chainsaw incident)
resulted in a six month suspended sentence with 18 months probation.  For the
arson arrest on 1/12/82 patient has a court date on 2/16/82.



NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2.  These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains.  A general authorization for the release of information is NOT sufficient for this purpose.

2/10/82 INTERVAL HISTORY (continued)

PRIMARY PROBLEMS: Patient's tendency to lose his temper, apparently mostly after drinking, is of immediate concern. His inability to hold jobs for any lengty of time inspite of good basic skills and willingness to work may might be considered as a facet of his difficulty in tolerating frustrations

FINANCES: Patient is able to work and may have a job with Danbury Print and Litho on release.

SHORT-TERM GOAL : Patient will gain some insight about his problems.

LONG-TERM GOAL : Patient will learn to deal with his frustrations in a more construct-ive manner. Since he seems ready to acknowledge the role alcohol plays in his difficulit-ies, the road to recovery may lead through an alcoholics rehabilitation program.

*Cecilie Courtright*

CECILIE COURTRIGHT
PSYCHIATRIC SOCIAL WORK RESIDENT

CC/jp

FEBRUARY 17, 1982 - INITIAL PSYCHODIAGNOSTIC APPRAISAL - ALCOHOL - Team members present were Dr. Petruschow, Staff Psychiatrist; Gerald Morgenstein, Social Work Service; Coleman Whitt, Nursing Service; and the patient himself.

IDENTIFYING PARAGRAPH - This is a 21 year old, single male who was admitted to Canaan House on a voluntary basis on Feb. 6, 1982 when he felt depressed and was bothered by suicidal ideas. The patient stayed in Canaan House until yesterday and then went to the Superior Court in Danbury and faced charges of arson. He was sent to us under the alcoholic commitment, paragraph 17-155Y, to attend our long-term rehabilitation program for a period of 90 days. After sequence of this order the man was transferred from Canaan House to our service in Fairfield House.

PHYSICAL CONDITION - The patient is moderately obese but has no signs of intoxication because his last drink did take place the day before he was admitted to Canaan House. The patient says that he was rejected by selective service because of difficulties he had with his legs. He says that both ankles were operated upon when he was young, but in addition to that he sustained a bad injury to the left ankle about two and a half years ago. He has to walk on his toes because the movement in both ankles are limited.

MENTAL STATUS - The patient readily realizes that he drinks too much and that at times he may consume a quart of vodka a day. He denies that he ever had depressions or hallucina-tory experiences but admits that he had repeated blackouts. The patient says that his drinking started about six years ago and soon became troublesome, but he managed to finish his high school in 1979. His parents are separated and he lives for the most part with his mother, who was instrumental in accusing him on the charge of arson. The patient says that he also was accused by his own mother of assault charges upon the boyfriend of her daughter. Presently the man is on 18-months probation. The patient broke off with his girlfriend about three weeks ago and started to feel the approaching depression. He was jilted after they spent 1½ years together and were emotionally and deeply involved with each other. The patient doesn't manifest anything delusional in nature and contact with reality is well preserved.

7

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899x and 168x and Federal Regulations 42 CFR-2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

## FAIRFIELD HILLS HOSPITAL

### Clinical Summary

Case No. 063,053          Name   BRETT BOLMER          Page  1.

### D A T A   B A S E

#### ADMISSION & CERTIFICATION NOTE

OCTOBER 5, 1985 – PATIENT INFORMATION: A 25 year old, white, single male.
He was admitted on a Physician's Certificate from Danbury Hospital.  The
P.C. was signed by Dr. D. W. Thomas.  He was brought by ambulance.

PRESENT COMPLAINT:
From P.C. – He has been in Fairfield Hills Hospital and admitted to suicidal
ideation.
From Patient: "I have suicidal tendencies".
Past Reasons for Hospitalization:  Past history in FHH.

MENTAL STATUS: Patient constantly crying and states "Please help me.  I am
suicidal".  He had surgery on left leg and states "I am crippled".  Affect
hostile.  Admits to suicidal ideation.  Admits hearing voices "Why should I
live in this world?"  History of suicidal attempt in the past; "Slashed my
wrist two years ago." Oriented to time, place and person.  Drinks alcohol
"occasionally".  Denies using drugs.  Judgement is poor, insight impaired.
The patient has delusions of persecution.

PHYSICAL FINDINGS:  Blood Pressure 130/80, Pulse Rate 75.

ADMITTING DIAGNOSIS: AXIS I:  295.34 Schizophrenia, paranoid, chronic with
                                    acute exacerbation
                     AXIS II:  V71.09 No Diagnosis
                     AXIS III:  None
                     AXIS IV:  Stress Level (0)
                                    Stressor – Other Psychosocial (10)
                     AXIS V:  Poor (5)

ADMITTING TREATMENT PLAN:  Regular diet.  Q 15 minute checks for suicidal
precautions X 24 hours.  Haldol 5 mg IM/PO Q 6 hrs prn for agitation X 24 hrs.

TENTATIVE DISCHARGE PLAN:
Prognosis:  Good
Length of Stay:  4 – 6 weeks
Living Arrangements:  "I like in a tent".
Aftercare follow-up:  Danbury Hospital
Finances:  Self
Education/Employment:  12th Grade/unemployed.

JUSTIFICATION FOR ADMISSION:  Need for psychiatric evaluation and treatment.
Patient is a danger to self and others.  Delusions of persecution.
        Incapacitated by mental illness.  Level of functioning impaired to extent
that patient is unable to adequately care for self or be cared for in other than
a psychiatric hospital.
        Based on the above information and assessment, I certify that the treatment
required by the patient can only be provided in an inpatient hospital setting

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written
consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR Part 2 prohibit you from making any further
disclosure without specific written consent of the person to whom it pertains.  A general authorization for the release of information is NOT sufficient for this purpose.

063,053                    BRETT BOLMER                    PAGE 2.

OCTOBER 5, 1985 - ADMISSION & CERTIFICATION NOTE:   (Continued)

JUSTIFICATION FOR ADMISSION (Continued) . . . and is reasonably expected to
improve the patient's condition.   Care in a less restrictive setting is not
presently available and inappropriate to meet patient's needs.

                                          Hossein Izadi, M.D.
HI:ef                                     Staff Psychiatrist

9

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written
consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further
disclosure without specific written consent of the person to whom it pertains.  A general authorization for the release of information is NOT sufficient for this purpose.

## FAIRFIELD HILLS HOSPITAL

### Clinical Summary

| Case No. | | Name | | Page |
|---|---|---|---|---|
| | 063,053 | | Brett Bolmer | 2 |

### MENTAL STATUS EXAMINATION

October 7, 1985– APPEARANCE, ATTITUDE, AND GENERAL BEHAVIOR– Patient is an obese, White male with a limp at left ankle. He was rather casually and shabbily dressed with poor personal hygiene. He had no abnormal motor patterns. He was fairly cooperative.

VERBAL BEHAVIOR– Patient's speech had no organic limitations. He was coherent and relevant without any looseness of association or flight of ideas.

MOOD AND AFFECT– Patient showed no vegetative signs of depression, although he would cry at the drop of a hat, with tears rolling down his cheeks. His affect was quite labile and appropriate. His mood, at times, would become angry and hostile, and at times he would be very guarded and suspicious.

CONTENT OF THOUGHT– Patient said that he wanted a shoulder to rest his head on and cry. He wanted to talk about his problems and that was why he came to the hospital. He said he was living in a tent and wanted shelter from the coming winter. He said he hadn't eaten for five months, but he did not appear under fed at all. The patient gave a history of alcohol abuse and abuse of other drugs, especially Cocaine. The patient said he had never worked in his life. The patient denied hearing voices, and at this time, he denies having any suicidal ideations or homicidal ideations.

SENSORIUM– Patient has an intact sensorium. He was oriented to time, place, and person. His memory and concentration appeared to be good.

INSIGHT, JUDGEMENT, AND RELIABILITY– Patient has extremely poor judgement and no insight. He was not at all reliable.

Tehmi Mulla, M.D.
Staff Psychiatrist

TM:cb

10

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

**Defendants' Exhibit D**
**New Milford Police Department Initial Report 7/13/2002.**

Ref: 02-565-OF          NARRATIVE FOR OFFICER CARLA TENCZA

*Page 8 of 9*

---

# NEW MILFORD POLICE DEPARTMENT
# INITIAL REPORT

DATE OF INCIDENT: 07/13/2002
TIME OF INCIDENT: 1114
REPORTING OFFICER: OFFICER CARLA TENCZA

DATE OF REPORT: 07/13/2002

On the above date and time I was dispatched to #39 Willow Springs for a report of a possible burglary and threatening complaint. Upon arrival I met with the complainant, identified as Jc Fredericks D ..... ...  J, who stated that Brett Bolmer D.O.B. 06/17/60, whom she knows, broke into her bedroom at about 10:40 AM and threatened her and her roommate. Fredericks stated that she was sleeping in the back bedroom of the condo where she stays, and that Bolmer entered her room through a locked sliding screen door, ripped the covers off of her and began yelling at her saying that he was going to kill her and another roommate, identified as Ke  Anderson D.O.B. c ...   '. I also spoke with one of Frederick's roommates, identified as A.        . Gibbs D.O.B. `  ` , who stated that he was at the residence when Bolmer broke in and that he heard him yelling at Fredericks. Gibbs stated that he was using the computer in the livingroom when he heard loud yelling coming from the back bedroom. Gibbs stated that he had assumed that Fredericks had turned on the T.V. loud, but that he realized there was a problem when he heard Fredericks yell back at Bolmer. Fredericks was very concerned about Bolmer returning to the residence and seemed eager to leave. Both Fredericks and Gibbs agreed to give me sworn written statements at department headquarters regarding the incident. While I was at #39 Willow Springs, I briefly spoke with the tenant leasing the condo, via telephone, identified as C     Anderson D.O.B. `  ` (K.  ' n Anderson's mother), who stated that she wished to see Bolmer prosecuted for forcing entry into her residence. K.     Anderson, who was at the residence when I arrived, was not present during the incident. I checked the rear sliding door and found that it had not been damaged by Bolmer's entrance. I met with Fredericks and Gibbs a short time later at the New Milford Police Department for their sworn written statements.

J.       ir Fredericks gave me a sworn written statement at approximately 1238 hrs on 07/13/02 which stated the following:

"At approximately 10:40AM on 07/14/02, I was sleeping in my bedroom at #39 Willow springs when I heard the screen sliding door, which was locked, open. I thought that it was one of my roommates so I wasn't immediately alarmed. The covers were suddenly pulled off of me, as I was in bed, and Brett Bolmer, whom I have had previous knowledge of, began asking me where k     1 was. I worked for Brett on two occassions and recognized him on sight. Brett said, "Where the hell is Ke   :?, I want my fucking money, I'm sick of this bullshit, I'm gonna kill you's". Brett kept repeating that he wanted his money and that he was going to kill us, meaning Kevin and I. At that point I tried to leave my bedroom and my roommate, A`  ` n Gibbs, tried to come in to see what was happening. When Andrewton came in Brett was still repeating that he was going to kill K   ...i and I went into the kitchen to grab the phone. I contacted Ke   ..'s mother, who told me to go to where he was working and let him know what had happened. We checked at Kr     s job, but he had gone home for a minute, and we caught up with him later at home. As soon as we returned home and met



Page 9 of 9

with K____ then K____ called the police. Brett has been calling numerous times saying that he wants money from Kevin. I am frightened of Brett and I do not feel comfortable around him. Brett has made lewd comments to me in the past and I am concerned for my safety as well as everyone in the condo. I would like Brett Bolmer prosecuted for threatening my life, as well as Ke__'s, and for breaking into my condo."

At____on Gibbs gave me a sworn written statement at approximately 1310 hrs on 07/13/02 which stated that following:

"At approximately 10:45AM on 07/13/02, I was using the computer in the livingroom of #39 Willow Springs, New Milford,CT. I have been staying at #39 Willow springs for about 3 weeks now. I heard loud noises coming from the back bedroom and I assumed that J____r Fredericks, my roommate, had turned the T.V. on loud. I was not concerned until I heard Jennifer yell, "I don't know" at someone, and then I realized that someone had entered her room. I immediately ran to the bedroom door and met Jennifer as she was trying to leave the room. I saw a large white male with grayish hair leaving her room through the back door. I heard this male say, "I want my fucking money, where's my $200.00?" "I've had enough of this shit, when I see Kevin I'm gonna kill him." I also heard this man say, "I'm gonna fuckin' kill you" to Jennifer. I observed this male run to a white vehicle parked behind our condo and leave at that point. I asked Jennifer who the guy was and what was going on and she said his name was Brett. Jennifer was very shaken up and I made her some tea and we started calling people to tell them what had just happened. The Police arrived a short time later."

Based on the verbal and sworn written statements of the parties involved, Brett Bolmer D.O.B. 06/17/60, was located and taken into custody without incident at 1421 hrs on 07/13/02. Bolmer was read his miranda rights, which he signed in acknowledgement, and was processed for the charges of Burglary in the 3rd Degree in violation of C.G.S. 53a-103 and Threatening in violation of C.G.S. 53a-62.

Bolmer made several verbal statements during processing stating that he had loaned Kev__ Anderson $1000.00 approximately 1+1/2 months ago and that he just went to #39 Willow Springs and asked for a payment. Bolmer denied stepping into the condo, but admitted that he did pull the slider open and lean his head in to speak with Fredericks. Bolmer was cooperative throughout his processing, but was very agitated and several times stated, "they're done, they barrow money from me and then they do this, they're done in my book." Bolmer stated that Fredericks was a lesbian, in one comment, and made several accusations of drug dealing and use by K____. Anderson. Bolmer stated that, "if they're gonna drop the dime on me, then I'm gonna drop the dime on them." Bolmer eagerly gave a sworn written statement regarding this incident, which is included.

Bolmer was held and later released on a $2,500.00 surety bond. Bolmer is scheduled to appear in Bantam Superior Court on 07/22/02 to answer for the charges stated above.



**Defendants' Exhibit E**
**Department of Mental Health and Addiction Services**
**Competence to Stand Trial Evaluation , Brett Bolmer 2/11/2003.**



# STATE OF CONNECTICUT

*DEPARTMENT OF MENTAL HEALTH AND ADDICTION SERVICES*

Division of Forensic Services

## Office of Court Evaluations

☑ **Bridgeport Office**
97 Middle Street
Bridgeport, CT 06604
203-579-7381
Fax: 203-579-7452

❑ **Hartford Office**
363 Russell Road
Newington, CT 06111
860-667-5973
Fax: 860-667-5983

❑ **New Haven Office**
CMHC
34 Park Street, Room 157
New Haven, CT 06519
203-974-7168
Fax: 203-974-7178

❑ **Norwich Office**
401 West Thames Street
Building 301
Norwich, CT 06360
860-859-4501
Fax: 860-859-4785

February 11, 2003

Mr. Eric Groody, Clerk
Superior Court GA 18
80 Doyle Road (P.O. Box 667)
Bantam, CT 06750

**RE: Brett Bolmer**
**DOB: 6/17/60**
**Docket #: CR02-108512,**
**-108511,**
**-108491**
**Hearing Date: 2/14/03**

## COMPETENCE TO STAND TRIAL EVALUATION

Dear Mr. Groody:

Pursuant to the order of Judge Black, dated 1/17/03 for a Competency to Stand Trial Evaluation, under C.G.S. §54-56d, Mr. Brett Bolmer was examined on February 4, 2003 for about one hour at the Bridgeport Office of Court Evaluations. The interviewing team consisted of James Phillips, M.D., Consulting Forensic Psychiatrist, Guay Chatfield, Ph.D., LCSW, Licensed Clinical Social Worker, and this writer Fred Storey, Ph.D., Forensic Psychologist. The purpose of this evaluation was to determine if, in our opinion, Mr. Bolmer is able to understand the proceedings pending against him and to assist in his defense.

In addition to eliciting information from the defendant for this report, we reviewed the following documents:
1. Family Violence Offense Report and Arrest Report dated 7/21/02
2. New Milford Police Reports dated 7/20/02 and 7/22/02
3. Arrest Reports dated 7/13/02, 7/20/02 and 7/22/02.
4. New Milford Hospital attendance confirmation notes dated 9/6, 10/11, 10/16, 11/14/02.
5. Jail Diversion Program Treatment Compliance Reports dated 7/23 – 8/5 and 8/28/02.

### CURRENT CHARGES
Mr. Bolmer is before the court charged with Burglary in the Third Degree and Threatening Second Degree stemming from an incident that occurred on July 13, 2002. He is also

*The confidentiality of this record is required under Chapter 899 of the Connecticut General Statute as Title 42 of the United States Code. This material shall not be transmitted to anyone without writ... consent or authorization as provided in these statutes.*

*An Equal Opportunity Employer*

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

Bridgeport Office of Court Evaluations
Competence to Stand Trial Evaluation

Re: Bolmer, Brett
C.G.S. §54-56d, Page 2

charged with Harassment in the Second Degree stemming from an incident that occurred on July 14, 2002. Finally, he is charged with Disorderly Conduct stemming from an incident that occurred on July 21, 2002. It is alleged that on July 13 Mr. Bolmer broke into the house of an acquaintance, apparently in an effort to collect money from one of the residents. He allegedly threatened to kill one of the other occupants and her roommate. The following day it is alleged that Mr. Bolmer phoned the same house and left a message that caused the occupants to be concerned for their safety. A week later, on July 21, it is alleged that Mr. Bolmer had a dispute with his brother, David. David reported to police that Brett attempted to hit him. Attorney Jim Longwell of the Bantam Superior Court Public Defender's Office, is now representing Mr. Bolmer in court. This is Mr. Bolmer's first competency evaluation by this office.

## OPINION
It is the unanimous opinion of the undersigned clinical team that at the time of the evaluation, Mr. Bolmer was not able to understand the proceedings against him or to assist in his own defense.

## CONFIDENTIALITY
At the beginning of the interview, Mr. Bolmer was informed that he was being examined pursuant to a court order regarding his competency to stand trial and a report would be prepared for the court. He was further advised that a team member might be required to testify and, therefore, information disclosed during the course of the examination would not be confidential. Mr. Bolmer indicated he understood this but it was uncertain whether he had an adequate understanding of these concepts.

## BACKGROUND HISTORY
The following information was obtained solely from Mr. Bolmer and has not been verified by collateral sources, as he exercised his right to deny the team access to medical records from Fairfield Hills Hospital or Danbury Hospital.

Mr. Bolmer is a forty-two year old, unmarried, Caucasian male, the third of five children, who was raised in an intact family. He reports a long history of abuse by his brother, David, but got along with his other siblings. He reported doing "OK" in school and said he did not receive Special Education services. He was involved in football, track, and wrestling. Mr. Bolmer planned to join the Navy, but was hit by a car in July of 1979 and lost his leg. He worked with his father for a while, building houses. He reported working as a bouncer at a bar at some time. He reported receiving Social Security disability benefits for a while, then began doing maintenance and landscape work which is his current means of support. The basis of his disability claim is unclear. He states he has never been married and has no children.

## MEDICAL, PSYCHIATRIC, and SUBSTANCE USE HISTORY
Mr. Bolmer said his skull was "crushed" in a mugging that occurred 12/25/88. He lost consciousness and had a "blood clot in the brain" requiring two weeks hospitalization and a steel plate in the right side of his face. When asked if he had ever experienced an

*The confidentiality of this record is required under Chapter 899 of the Connecticut General Statutes as well as Title 42 of the United States Code. This material shall not be transmitted to anyone without written consent or authorization as provided in these statutes.*

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

Bridgeport Office of Court Evaluations
Competence to Stand Trial Evaluation

Re: Bolmer, Brett
C.G.S. §54-56d, Page 3

epileptic seizure, he said, "No, but I'd like to." He takes Synthroid for a thyroid disorder
and states he is diabetic but does not require medication for this illness.

Mr. Bolmer denied ever using drugs or recently drinking alcohol, although he
acknowledged drinking several years ago. He did however report having psychiatric
problems "my whole life." When asked the nature of these difficulties, he said, "I'm a
bipolar schizophrenic something else." He obtained outpatient services in Danbury and
was inpatient at Danbury Hospital and Fairfield Hills Hospital, but would not authorize
this office to review his medical records. He is not currently receiving any treatment and
said he was last treated about five years ago. At the time of this evaluation, he was not
taking any psychotropic medications.

## MENTAL STATUS EXAMINATION

Mr. Bolmer is a stocky Caucasian man with a notably red face, short brown hair and a
graying beard. He arrived on time for the interview dressed in a denim shirt over a T-shirt.
His hygiene was fair, as his hair was uncombed, his hands were dirty, and some body odor
was evident. Mr. Bolmer made adequate eye contact but was hostile and cynical
throughout the interview.

From the beginning of the interview Mr. Bolmer spoke rapidly and usually irrelevantly of
his victimization and incidents of mistreatment at the hands of his brother and the police.
For example when asked if he knew the purpose of the evaluation, Mr. Bolmer began
explaining that his brother pushed him down, that he had a nervous breakdown in jail, and
that the charges should have been thrown out. He concluded his lengthy response by
saying "Just throw me in jail if you want me to go. I'm going to sue the state. I'm the
victim of a crime and I'm treated like a criminal!" (The same words appear in his
statement to the police on 7/21/02). Thus, in perhaps five or ten minutes of pressured
speech, Mr. Bolmer was not able to answer a simple yes-or-no question.

The defendant's affect was labile and quite intense at times, but generally congruent with
the content of his speech. He described his mood as "stressed out" and he appeared
alternately agitated and hopeless during the interview. When he was interrupted or
redirected to the question, Mr. Bolmer's motivation appeared to collapse and he would
simply say "I don't know." In an attempt to improve his effort toward the evaluation, he
was informed that if he was found not competent, he might be sent to a hospital. Mr.
Bolmer responded, "I don't care; throw me in jail."

Mr. Bolmer was oriented and was aware of current events, such as the space shuttle
disaster. He knew the names of the current President, Vice-President and Governor. His
immediate and short-term memory were intact as evidenced by his ability to recall three
items after three minutes. His attention and concentration were somewhat impaired as he
was not able to perform serial threes subtraction, a monetary word problem, and could
recall only three digits backward (five is average). His fund of knowledge was good as he
knew the function of the stomach and the compass directions to California and Florida.

*The confidentiality of this record is required under Chapter 899 of the Connecticut General Statutes as well
as Title 42 of the United States Code. This material shall not be transmitted to anyone without written
consent or authorization as provided in these statutes.*

3

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written
consent or authorization as provided under Connecticut General Statutes, Chapters 899e and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further
disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

Mr. Bolmer's ability to think abstractly and understand concepts was limited. He was able to correctly identify the similarity between two words in five of seven pairs presented. However, when asked to explain some common proverbs, he provided personalized and vindictive responses. For example, when asked the meaning of *what goes around comes around*, he said, "It means those dirt bags are going to jail." For *don't cry over spilt milk*, he responded "I was pushed down by my brother!" This self-focus was evident in his social judgement as well. When asked what he would do if he was the first to see a fire in a theatre, he said "leave." Asked if he would do anything else, he said "No, just leave."

## ABILITY TO UNDERSTAND THE PROCEEDINGS
Mr. Bolmer had difficulty understanding the charges against him. While he generally recalled the events described in the police report he judged that "they're all trumped up charges." With repeated redirection and encouragement, the clinical team was able to review all of the charges with the defendant. However, even after reviewing the charges with him, Mr. Bolmer was only able to recall two of the four charges against him.

Although Mr. Bolmer was tangential in his remarks, he demonstrated a limited factual understanding of the basic pleas and roles of some court personnel. He knew his attorney's name and that his job was "to defend me." He knew the judge was supposed to be impartial. He was aware that a sentence might involve jail or probation. However, he went on to say he had been on probation for 20 years. He said the prosecutor's job was "to convict me of things I didn't do. What's her name -- Marsha Clarke." He said a guilty plea would lead to incarceration and a not guilty plea would lead to dismissal of the charges. Told this was not correct, he said "I don't care no more."

## ABILITY TO ASSIST IN DEFENSE
Mr. Bolmer knew his attorney's name, but was guarded and suspicious. When asked why he thought his attorney might have requested this evaluation, he said "to waste the court's time." In exploring his persecutory thoughts, he was asked if he thought the court was rigged against him. Mr. Bolmer answered, "The police department is, and the court because my brother has a friend in the police department." He later confirmed, "It's a conspiracy between all the parties." Thus, the defendant's motivation to collaborate with his attorney is impaired by his persecutory ideas.

Mr. Bolmer demonstrated an impaired capacity to collaborate with his attorney and with the evaluation team, beyond the above concern with his motivation. His thinking was so tangential and inflexible that the team had difficulty interrupting Mr. Bolmer and was unable to redirect him to the process of evaluation. These interactions with the clinical team and the reported interactions with his attorney demonstrate that Mr. Bolmer would be unable to collaborate with his attorney, consider his instructions and advice, learn new information, or ask clarifying questions when necessary.

Finally, Mr. Bolmer's emotional lability impairs his self-control, his ability to weigh his alternatives rationally, and his ability to manage stress. When asked about the possibility of a trial, he said "I'm going to string it out for five years. I don't care. I want a judge and a jury then I'll sue everybody!" In our opinion, Mr. Bolmer would be unable to tolerate the

*The confidentiality of this record is required under Chapter 899 of the Connecticut General Statutes as well as Title 42 of the United States Code. This material shall not be transmitted to anyone without written consent or authorization as provided in these statutes.*

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

Bridgeport Office of Court Evaluations
Competence to Stand Trial Evaluation

Re: Bolmer, Brett
C.G.S. §54-56d, Page 5

stress of a trial and, if subjected to that stress, would have more impaired judgement and
decision-making abilities than he currently does.

## CONCLUSION

Mr. Bolmer is a 42 year-old, unmarried, Caucasian man with a history of difficulties with
the law and psychiatric symptoms including pressured speech, paranoid delusions, and
emotional dyscontrol. At the time of this examination these psychiatric symptoms were
readily apparent. While Mr. Bolmer's comments displayed a minimal understanding of the
charges and roles of courtroom personnel, the extent of his knowledge of legal concepts
could not be assessed due to his inability to respond relevantly. He did not demonstrate an
ability to engage with the team in a logical, coherent, and goal-directed discussion of his
current legal situation.

As evidenced by his interactions with the clinical team, it is the team's unanimous opinion
that the defendant is not presently able to establish a collaborative relationship with an
attorney. Given his significant impairments in thinking rationally, it is the opinion of the
team that he cannot effectively follow testimony for contradictions and errors, bring
relevant information to his attorney's attention, testify meaningfully and be cross-
examined, understand instructions and advice, or make rational, realistic, and informed
decisions about the handling of his case. It is therefore the unanimous opinion of the
clinical team that he does not have a rational understanding and cannot assist in his defense
at this time.

Should the court find Mr. Bolmer not competent to stand trial under C.G.S. §54-56d, it is
the unanimous opinion of the clinical team that there is a substantial probability that he
could be restored to competency following a sixty day commitment to inpatient psychiatric
evaluation and treatment for the purpose of restoration. The team recommends placement
in the custody of the Commissioner of Mental Health and Addiction Services at
Connecticut Valley Hospital, Middletown, Connecticut. Inpatient treatment is
recommended as the least restrictive setting due to the severity of Mr. Bolmer's
impairment, his lack of insight into his psychiatric illness, and the likelihood of his
noncompliance with psychotropic medications in outpatient treatment.

Respectfully submitted,


James Phillips, M.D.
Psychiatrist

Fred Storey, Ph.D.
Clinical Psychologist

Guay Chatfield, Ph.D. LCSW
Psychiatric Social Worker

On Behalf of Thomas A Kirk, Jr., Ph.D.
    Commissioner of Mental Health and Addiction Services

*The confidentiality of this record is required under Chapter 899 of the Connecticut General Statutes as well
as Title 42 of the United States Code. This material shall not be transmitted to anyone without written*

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written
consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further
disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

**Defendants' Exhibit F**
**Superior Court Competency to Stand Trial**
**Finding and Order of Placement Brett Bolmer 2/14/2003**

**COMPETENCY TO STAND TRIAL**
**FINDING AND ORDER OF PLACEMENT**

JD-CR-7 Rev. 9-98
C.G.S. § 54-56d

**INSTRUCTIONS**
1. Prepare in triplicate if placement order is made.
2. File one copy.
3. Give original and copy to proper officer for service.



## SECTION I - FINDING AND ORDER AFTER EXAMINATION AND HEARING

| NAME OF DEFENDANT | D.O.B. | LOCATION OF DEFENDANT *(If confined name institution, if not name attorney and home address)* |
|---|---|---|
| Brett B. Bolmer | 6-17-60 | 8 Prospect St., New Milford, CT |

| JUDICIAL DISTRICT OR G.A. | ADDRESS OF COURT | DOCKET NO. |
|---|---|---|
| GA 18 at Bantam | 80 Doyle Rd., Bantam, CT | CR02 108512<br>CR02 108511<br>CR02 108491 |

☐ 1.  After a hearing, the court finds that the defendant is competent and orders that the criminal proceedings continue.

☐ 2.  After a hearing, the court finds by a preponderance of the evidence that the defendant is not competent and also finds that the defendant is unable to understand the proceedings against the defendant or to assist in the defendant's own defense and that there is not a substantial probability that the defendant, if provided with a course of treatment, will attain competency within the period of any placement order permitted under General Statute § 54-56d, and orders the defendant:

  ☐ released.
    ☐ *[Can only be checked if alleged crime results in death or serious physical injury, as defined in C.G.S. §53a-3, of another person.]* A special condition of such release is that the defendant submit to periodic examinations of the defendant's competency in accordance with C.G.S. §54-56d(m). If it is found that the defendant has attained competency, the defendant shall be returned to custody or released, if the conditions for release have been met, and the court shall continue the criminal proceedings.
    The defendant shall be examined in accordance with C.G.S. §54-56d(m):
      ☐ on or before *(specify date:)* _____ OR ☐ every *(specify frequency:)* _____

  ☐ committed to the Commissioner of Mental Health and Addiction Services for the purpose of applying for a civil commitment.
  ☐ committed to the Commissioner of Mental Retardation for the purpose of applying for a civil commitment.
  ☐ committed to the Commissioner of Children and Families for the purpose of applying for a civil commitment.

☒ 3.  After a hearing, the court finds by a preponderance of the evidence that the defendant is not competent and also finds that the defendant is unable to understand the proceedings against the defendant or to assist in the defendant's own defense and that there is a substantial probability that the defendant, if provided with a course of treatment, will regain competency within the period of any placement order permitted under General Statute § 54-56d, and orders placement of the defendant:

  ☒ with the Commissioner of Mental Health and Addiction Services for treatment as an:  ☒ Inpatient  ☐ Outpatient
  ☐ with the Commissioner of Mental Retardation for treatment as an:  ☐ Inpatient  ☐ Outpatient
  ☐ with the Commissioner of Children and Families for treatment as an:  ☐ Inpatient  ☐ Outpatient
  ☐ if the defendant or the appropriate Commissioner agrees to provide payment, as an:  ☐ Inpatient  ☐ Outpatient
    with an appropriate mental health facility or treatment program which agrees to provide treatment to the defendant and to adhere to the requirements of General Statute § 54-56d.

☐ 4.  *[Can not be checked until after first 90 day hearing.]* After a hearing, the court finds that the defendant is still not competent and will not attain competency within the remainder of the period covered by the commitment order absent administration of psychiatric medication for which the defendant is unwilling or unable to provide consent

**TO:** | NAME AND ADDRESS OF LICENSED HEALTH CARE PROVIDER WITH SPECIALIZED TRAINING IN PSYCHIATRY
Connecticut Valley Hospital

You are hereby appointed by the court (1) to represent the health care interests of the defendant, and (2) to file a written report with the court setting forth your findings and recommendations concerning the administration of psychiatric medication to the defendant.

## NOTICE TO HEALTH CARE INTERESTS REPRESENTATIVE

A written report of your findings and recommendations concerning the administration of psychiatric medication to the defendant must be submitted to the court within thirty (30) days of the Date of Order shown below. Said report shall include (1) the risks and benefits of such medication, (2) the likelihood and seriousness of any adverse side effects, (3) the defendant's prognosis with and without such medication and (4) such other information as you deem pertinent. Pursuant to section 54-56d of the general statutes, notwithstanding the provisions of section 52-164e of the general statutes, you shall have access to the psychiatric records of the defendant. You must sign the report, which will be introduced into evidence. You must be present to testify regarding your report at a hearing to be scheduled not later than (10) days from the date the report is received by the court.

## NOTICE TO CLERK

A hearing on the health care interests representative's report shall be scheduled no later than 10 days from the date the report is received by the court. Upon receipt by the court of the report, immediately forward copies to the prosecuting authority and counsel for the defendant and give notice of the date of hearing. Notify the health care interests representative when and where to appear.

| DATE OF ORDER | BY THE COURT *(Name of Judge)* | SIGNED *(Assistant Clerk)* | DATE SIGNED |
|---|---|---|---|
| 2-11-03 | | | |

Note: Confidentiality of psychiatric, drug/alcohol abuse and HIV records is required. No information from these specific records shall be transmitted to anyone else without consent or authorization as provided under Connecticut General Statutes, Chapters 899 and 368x and Federal Regulations, 42 CFR 7. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

*continued*

☐ 5. *[Can not be checked unless there was a hearing on the health care interests representative's report.]* The court finds that the defendant will not attain competency within the remainder of the period covered by the placement order absent the administration of psychiatric medication for which the defendant is unwilling or unable to provide consent. After a hearing held pursuant to general statutes section 54-56d(k)(3), the court finds by clear and convincing evidence that (1) to a reasonable degree of medical certainty involuntary medication of the defendant will render the defendant competent to stand trial, (2) an adjudication of guilt or innocence cannot be had using less intrusive means, (3) the proposed treatment plan is narrowly tailored to minimize intrusion on the defendant's liberty and privacy interests, (4) the proposed drug regime will not cause an unnecessary risk to the defendant's health, and (5) the seriousness of the alleged crime is such that the criminal law enforcement interest of the state in fairly and accurately determining the defendant's guilt or innocence overrides the defendant's interest in self-determination. The court, therefore, hereby orders the involuntary medication of the defendant in accordance with:

    ☐ the defendant's health care interests representative's report.

    ☐ other (specify):

_____
_____
_____
_____
_____
_____
_____

**A hearing to reconsider the issue of the defendant's competence shall be held within 90 days of the date of this order. Such hearing date shall be no later than** ➡ HEARING DATE **4-15-03**

| BY ORDER OF THE COURT (Name of Judge) | SIGNED (Assistant Clerk) | DATE SIGNED |
|---|---|---|
| Marylouise S. Black | Dep. Clerk | 2-14-03 |

## SECTION II - COMMITMENT ORDER

TO: The Sheriff, his Deputy, or any proper officer and the Commissioner of Mental Health and Addiction Services, Commissioner of Mental Retardation, Commissioner of Children and Families or person in charge of mental health facility or treatment program.

PLACED WITH ☒ COMMISSIONER OF MENTAL HEALTH & ADDICTION SVCS ☐ COMMISSIONER OF CHILDREN AND FAMILIES ☐ COMMISSIONER OF MENTAL RETARDATION ☐ MENTAL HEALTH FACILITY OR TREATMENT PROGRAM

MAXIMUM PERIOD OF PLACEMENT *(Select the lesser)* ☒ 18 MONTHS ☐ MAXIMUM SENTENCE FOR OFFENSE CHARGED: _____ MONTHS

PLACEMENT FACILITY *(Name and address of mental health facility or treatment program to which the accused is committed)* Conn. Valley Hospital

BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to take and convey said defendant to the above Commissioner and/or said Commissioner's agent, or the Superintendent of the above placement facility and deliver said defendant to the above Commissioner or appropriate mental health facility or treatment program and said Commissioner or Superintendent is hereby commanded to keep safely the defendant until the defendant is able to understand the proceedings against the defendant and to assist in the defendant's own defense but not to exceed the maximum period of placement indicated above, and said Commissioner or Superintendent is further commanded to issue to this court a verified progress report pursuant to C.G.S. § 54-56d(j) AT LEAST 7 DAYS PRIOR TO THE HEARING DATE INDICATED ABOVE or at any time when such Commissioner or Superintendent believes that said defendant has attained competency or that there is no substantial probability that said defendant will attain competency during the maximum period of placement shown above.

| BY ORDER OF THE COURT (Name of Judge) | SIGNED (Assistant Clerk) | DATE SIGNED |
|---|---|---|
| Black, J. | | 2-14-03 |

## RETURN OF SERVICE

Then and there, by virtue hereof, I took and conveyed the above-named defendant to the placement facility specified above and there delivered said defendant into the hands of the above Commissioner and/or said Commissioner's agent or the Superintendent of the placement facility or treatment program and left with said Commissioner or Superintendent this Mittimus.

| SIGNED (Deputy Sheriff, Constable, State Policeman) | DATE |
|---|---|
| | |

JD-CR-7 Rev. 9/98 (page 2)

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required. Information from these specific records shall not be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

(page 2 of 2)

**Defendants' Exhibit G**
**Connecticut Valley Hospital Admission**
**Psychiatric Evaluation Brett Bolmer 2/14/2003**

CVH-314
Rev.10/01

**CONNECTICUT VALLEY HOSPITAL**
**ADMISSION PSYCHIATRIC EVALUATION**

Date of Evaluation: __2/14/03__

[ ] General Psychiatric Division            Name: __Bolmer, Brett__
[ ] Addiction Services Division
[X] Whiting Forensic Division      MPI#: _146031_      Date of Birth: __6/17/60__

*Print or Addressograph Imprint*

Admission Date: __2/14/03__   Sex: _Male_   Race: _White_   Marital Status: _Single_

[X] New Admission (this Division)   [] Re-Admission (this Division) ·Readmission # _____

| PSYCHIATRIC DIVISIONS | ADDICTION SERVICES DIVISION |
|---|---|
| **LEGAL STATUS ON ADMISSION** | [] Voluntary Alcohol 17a-682 (11000) |
| [] Voluntary 17a-506 (12000) | [] PEC (5 day) Alcohol 17a-684 (24100) |
| [] PEC (15 day) 17a-502 (24200) | [] Probate Court Commitment PA98-219 (23100) |
| [] Probate Court Commitment 17a-498c (23200) | Addiction Services |
| [] Voluntary from Corrections 17a-513 (25210) | [] Substance Dependence Pre-Trial 17a696 (22700) |
| [] PEC from Corrections 17a-514 (25220) | [] Substance Dependence Post-Conviction 17a699 (22800) |
| [X] Competency Restoration 54-56d (22100) | [] Transfer Corrections 17a-681 (25100) |
| [] Commitment to PSRB 17a-582 (22600) | |
| [] 45-day WFD Evaluation 17a-582a (22500) | |
| [] Post-Conviction WFD Exam/Screen 17a-566a (22300) | [] Other(specify):_____ |
| [] Disposition After Report WFD 17a567 (22400) | |
| [] Other(specify):_____ | |

1.    **REASON FOR ADMISSION:**
      Informants/Information from others: Restoration to competency.

      Direct quote from patient: "Why are you seeing me for. I don't need to see anybody else."

2.    **HISTORY OF PRESENT ILLNESS:** 42 year-old Caucasian male; extremely agitated and unpredictable but gradually gaining control as he verbalizes frustration. Avoidance of giving information and extremely guarded about medications or psychiatric diagnosis. Charged with Burglary, Threatening and Harassment, apparently the result of breaking into the house of an acquaintance in an effort to collect a debt. He presents this information in a disorganized manner and resisting all the admission procedures but gradually able to restrain himself and comply.

3.    **FAMILY, PERSONAL AND SOCIAL HISTORY; PHYSICAL ABUSE:** Never married, has no children, raised in an intact family, the third of five (5) children. No problems during schooling; participated in football, track and wrestling. A motor vehicle accident left him on temporary disability. Currently supporting himself doing maintenance and landscaping.

4.    **PAST PSYCHIATRIC HISTORY AND TREATMENT:** Previous admissions to Fairfield Hills Hospital and Danbury Hospital but he declines giving information other than saying he was treated with Lithium or Neurontin "for a sort of Schizoaffective Disorder". Seen intermittently at Danbury Outpatient Hospital.

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

Adn. ɔion Psychiatric Evaluation, continued

**Patient: Bolmer, Brett**          **MPI # 146031**                    **Page 2**

5.   **SUBSTANCE ABUSE HISTORY AND TREATMENT:**  Alcohol "in the past" – blackouts but no seizures.  Denies use in the past year.

6.   **PAST MEDICAL HISTORY AND TREATMENT:** Loss of consciousness with left leg repair; craniotomy and steel plate on right side of face.  Did not elaborate any further.   Untreated Diabetes – current blood sugar 240.  Receives treatment for a thyroid condition but does not follow.

7.   **MENTAL STATUS EXAMINATION:**

A.   *Appearance, behavior, alertness:*  Large frame, muscular Caucasian male; disheveled and with unkempt beard.  Alert and restless.

B.   *Speech:* Rapid; pressured; shows disorganization while trying to express his ideas.

C.   *Thought Processes:*  Flight of ideas; having difficulties expressing thoughts due to anger.

D.   *Thought Content:*  Perseverates on his older brother who acts like a bully.   The need to collect debts.

E.   *Perceptions:* Denies auditory or other type to hallucinations.

F.   *Mood and Affect:*  Angry; anxious with episodic irritability and agitation.

G.   *Dangerousness:*
     *Suicidality:*  Denies – no previous history.

     *Homicidality:* Denies – no history.

H.   *Insight, Judgment:* Impaired.

I.   *Cognition:*
     1.   *Orientation:*  (document patient's orientation to person, place, and time/date): Oriented to time, 2/14/03, CVH – identify roles of patient and staff, recognizes me as a doctor.

     2.   *Memory:*
          2a. Remote Memory: (Document patient's answers to recollection of specific events from her/her past, e.g. "Where were you born?" "Where did you go to school?" "Where did you grow up?"):
     Born in Danbury; grew up in Newtown; describes reasons for his arrest with details.

          2b.  Recent Memory: (Document patient's answer to recollection of specific events from his/her more recent past, e.g. "Where were you yesterday?" "What did you have for breakfast/lunch/dinner?" OR Ask the patient to remember 3 unrelated items and then retest after 5 minutes have elapsed and document):
     Patient recall his breakfast was a sandwich; the court attendance in Bantam, CT and the name of his public defender.

          2c.  Immediate Memory: (Ask the patient to repeat 3 times after you immediately):
     Book, telephone and school bus repeated immediately.

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes. Chapters 899c and 368x and Federal Regulations 42 CFR 2.  These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains.  A general authorization for the release of information is NOT sufficient for this purpose.

**Admission Psychiatric Evaluation, continued**

**Patient: Bolmer, Brett**              **MPI # 146031**                              **Page 3**

3.    *Intellectual Functioning:* (Estimate based on interview with patient or specific IQ tests results, if available)
Average.

8.    **SIGNIFICANT PHYSICAL/NEUROLOGICAL FINDINGS:** Numerous scars.    No neurological findings.  Untreated Diabetes Mellitus.  Untreated Thyroid Condition.

9.    **PATIENT ASSETS/STRENGTHS and RESOURCES:** *(For example, family relationships and other supports, education, employment experience & training, interpersonal skills, cognitive and coping skills, special interests, ability to meet daily needs, awareness of illness, understanding of medications, other)*
-    Able to control anger on his own through verbalizations.
-    Responds to persuasion and follows directions.
-    History of gainful employment and independent living.
-

10.    **PRELIMINARY TREATMENT PLAN:**         Accu-checks.
ADA diet.
F/O for potential assaultiveness.

11.    **TENTATIVE DISCHARGE PLAN:** Return to court for further disposition.

12.    **PROVISIONAL DIAGNOSES:**

**Psychiatric**
        **AXIS I:**        Mood Disorder in association with head trauma
                        Alcohol Abuse

        **AXIS II:**        Deferred

**Physical**
        **AXIS III:**        Diabetes Mellitus – non-insulin dependent
                        Thyroid Disorder


**AXIS IV *(Stressors):***    [X]   0   Problems with primary support group
                        [X]   1   Problems related to the social environment
                        [ ]   2   Educational problems
                        [X]   3   Occupational problems
                        [X]   4   Housing problems
                        [X]   5   Economic problems
                        [ ]   6   Problems with access to health care services
                        [X]   7   Problems related to interaction with the legal system/crime
                        [ ]   8   Other psychosocial and environmental problems

*3*

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2.  These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains.  A general authorization for the release of information is NOT sufficient for this purpose.

**Admission Psychiatric Evaluation, continued**

**Patient: Bolmer, Brett**          **MPI # 146031**                    **Page 4**

| | Global Assessment of Functioning | | |
|---|---|---|---|
| **AXIS V:** Current GAF | 100-91 Superior functioning | 30-21 | Behavior influenced by delusions/ hallucinations; serious impairment in communication; judgment or inability to function almost all areas |
| | 90-81 Absent; minimal symptoms | | |
| 31 - 40 | 80-71 Symptoms transient; slight impairment | | |
| Highest GAF Past Year | 70-61 Mild symptoms; some difficulty in functioning | 20-11 | Some danger of hurting self or other, occasionally fails to maintain hygiene, gross impairment in communication |
| | 60-51 Moderate symptoms; some difficulty in functioning | | |
| 0 | 50-41 Serious symptoms; any serious impairment in functioning | 10-1 | Danger of severely hurting self or others; inability to maintain minimal hygiene; serious suicidal act |
| | 40-31 Some impairment in reality testing/ communication; major impairment in several areas | 0 | Inadequate information |

*More M*
*Joseph More, MD for:*
Jose Tellechea, M.D., Psychiatrist
2/14/03

JT/lhm

*4*

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

**Defendants' Exhibit H**
**CVH Initial Occupational Therapy Assessment 2/21/2003**

CVH-457
Rev. 12/01

# CONNECTICUT VALLEY HOSPITAL
# INITIAL OCCUPATIONAL THERAPY ASSESSMENT

[ ] General Psychiatry Division                 Patient Name _Brett Bolmer_
[ ] Addiction Services Division
[ ✓ ] Whiting Forensic Division                 MPI # _146031_          *Print or Addressograph Imprint*

Unit/Ward _B45  86_

Date of Birth _10 | 07 | 60_   Admission Date _2/14/03_   Evaluation Date _2/21/03_

**Diagnoses:**
Axis I _Mood disorder in association c̄ head trauma , ETOH abuse_
Axis II _Deferred_
Axis III _Diabetes mellitus - non insulin dependent, thyroid d/o_
**Reason for Referral** _assessment of independent living skills and appraisal for group_
**Precautions/contraindications** _—_

Level of Functioning:
[ ✓ ] Lived Independently          [ ] Has Conservator of Person   _I lived in a basement_
[ ] Resided in a Facility           [ ] Has Conservator of Estate   _apartment. Not very good_
[ ] Lived with Family/Other Supports [ ] Other                      _conditions, but I managed._

## BASIC & INSTRUMENTAL ACTIVITIES OF DAILY LIVING:

| | | |
|---|---|---|
| **I** Independent | **Min Assist** 25% or less | **NT** Not Tested |
| **VC** Verbal/Visual Cues | **Mod Assist** 50% or less | **NA** Not Applicable |
| **MC** Manual Cues | **Max Assist** 75% or less | |
| **S** Supervision | **Total** Requires 100% Assist | |

_Pt. reports_

| BADLs | Assist | Comments |
|---|---|---|
| Feeding Skills | I | |
| Toileting | | |
| Wash Face | | _No Reminders to shower 1x per wk. do I_ |
| Bathing | | _shower —_ |
| Shampoo Hair | | |
| Comb Hair | | _uses fingers to comb hair_ |
| Apply Make-up | | |
| Shave | ✓ | _1x per mth trim beard, mustache —_ |
| Dress/Undress | I | |
| Fasteners | I | |
| Other | — | _(L) thumb is numb. From knuckle up —_ |

| IADLs | Assist | _This happen when I was getting arrested —_ Comments |
|---|---|---|
| Safety | I | |
| Cleaning | I | _Sloppy — I want to live that way._ |
| Laundry | I | _I think today is my laundry day ✓ knows about_ |
| Telephone | I — VC | _cued to look under Pizza in yellow pages._ |
| Shopping | I | _"I have to look @ pkgs for sugar, Sodium._ |
| Meal Prep | I | _I buy celery peanut. sometimes there balance —_ |
| $$ Management | I | _Bill collectors called me all the time, I lose $ all the time_ |
| Transportation | I | _when I work for people._ |
| Other | | _Truck and car — 8 more mths to go on Truck paym_ |
| | | _$1,000 per mth_ |

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes Chapter 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by such regulation. A general authorization for the release of medical or other information is NOT sufficient for this purpose.

Patient Name _Brett Bolmer_   MPI# _146031_

## SENSORY-MOTOR SKILLS:

| | Comments |
|---|---|
| Mobility | (L) Shd causes difficulty |
| Hand Dominance | Right |
| Thumb-Finger Opposition | WFL |
| UE Range of Motion | able to Raise Right arm above head, (L) c much pain |
| Tone | WFL |
| Static Balance | cannot Stand for Long time without getting Dizzy |
| Dynamic Balance | reports 1/2 amputated bone spur R, L craddel keeps moving |
| Edema | Shd – |
| Other  Strength/ | WFL – Knows how to protect back – Since Do July 2002 more |

## COGNITIVE SKILLS:

Communication _articulation clear; lengthy explanations of wrongs others have done to him_ (↓ ability – used to be able to move refrig by self – but is pr.)

Orientation _O x 3_

Memory _Intact_

Attention Span _able to attend in hour interview_

Ability to Follow Directions _remembered 3 step directions_

Judgement/Reasoning _impaired_

Problem Solving _able to perform basic math problems and not change in sign_

Comments _____

## PERCEPTUAL & SENSORY SKILLS:

R/L Discrimination _(R)(L) intact on self & others_

Body Part Identification _intact_

Spatial Relations _intact_

Eye/Hand Coordination _intact_

Visual _intact_

Auditory _(R) eardrum - hurts at loud noises - had been broken in past by_ report no functional problem

Olfactory/Gustatory _taste lost, - at times can smell_

Tactile _Left thumb numb - dorsal surface_

Comments _____

## PSYCHOSOCIAL SKILLS:

Self Expression _angry at brother, friend loaned money to, Milford Police etc_

Identify & Articulate Feelings _able to identify emotions_

Interpersonal Interactions _"Reports will kill others" when gets out_

Boundaries _appropriate on unit_

Anger Management _verbalizes anger; only has a dog to talk things over_ WFL

Coping Style _go for a ride, walk in woods) -_

Substance Use _Smoke marijuana )_

Comments _Hx of owning own "handyman" business_

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

Page 2 of 2

Patient Name _Brett Bolmer_     MPI# _146031_

**CLINICAL SUMMARY** _Mr. Bolmer is a 42 year old, white male who was admitted to CVH for restoration to competency. He was referred to occupational therapy at his request for possible addition to OT groups. Mr. Bolmer was awakened from rest in afternoon. He appeared slightly disheveled. He was cooperative to interview. Many answers were lengthy and focused on his being shorted by his brother and being mistreated by milford police. He has sequelae of past MR injuries also ___ ___ ___ ___ ___ ___ ___ ____

**Patient Identified Strengths** _Strong, good with customers, knows how to price jobs ___

**Patient Identified Treatment Goals** _"Stay out of trouble"._

**Identified Barriers to Functional Independence** _his alcohol abuse and untreated diabetes - When stable can be expected live independently_

**Treatment Goals/Objectives** _1) Pt will be able to focus on group topic during discussion with minimal redirection. 2) Pt will be able to make positive self statements._

**Frequency & Duration of Treatment** _2X/week for one hour each_

**Additional Evaluation/Assessment Indicated?** [ ] Yes  [ x]No _not at this time_

[ ] ACLS                          [ ] Contextual Memory Test        [ ] COPM
[ ] CPT                           [ ] West Hand Sensation           [ ] MVPT
[ ] ADM                           [ ] Splint Evaluation             [ ] Perdue Pegboard
[ ] KELS                          [ ] Safety Evaluation             [ ] Feeding
[ ] TCA                           [ ] Grocery Shopping Evaluation   [ ] CAKES
[ ] Toglia Test for Attention     [ ] Cooking Evaluation            [ ] SARIB

[ ] Other _____

**Conclusions/Recommendations** _____
_Life Skills Group   Tues & Fri   9 Am_

_Kathryn J. Nelson, COTA/L_
Certified Occupational Therapy Assistant                  Date _2/21/03_

_Elaine Keeler OTR/L_
Registered Occupational Therapist                         Date _2/21/03_

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

3

Bratt Bolen Bolm___

```
    1                              1  1
   78              96             154
 + 24            - 25          + 748
 ─────           ─────          ─────
  102              71            902
```



✡

cued to remember
the date —

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes. Chapters 899c and 368x and Federal Regulations 42 CFR 2.  These laws prohibit you from making any further Page 4 of 4 or specific written consent of the person to whom it pertains.  A general authorization for the release of information is NOT sufficient for this purpose.

**Defendants' Exhibit I**
CVH Admission Psychosocial History and Assessment Brett Bolmer 3/18/2003

CVH-305
Rev. 9/01

# CONNECTICUT VALLEY HOSPITAL
## ADMISSION PSYCHOSOCIAL HISTORY
### AND ASSESSMENT

[ ] General Psychiatry Division
[ ] Addiction Services Division
[X] Whiting Forensic Division

Name: BOLMER, BRETT

MPI#: 146031

Alias Name(s):

Date of Admission: 02/14/03      Date of Birth: 06/07/60      Age: 42      SS#: 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

Legal Status: 54-56d      Primary Referral Source: Superior Court GA 18, Bantam, CT

Birthplace: Danbury, CT      U.S. Citizen:   [X] Yes   [ ] No   Religion:

Last Community Address: 8 Prospect Street; New Milford, CT  06776

Marital Status:  [X] Never Married
Parole/Probation Officer  [X] No

**RACE:**                                      **ETHNIC ORIGIN:**
[X] (01) White                                 [X] (02) Non Hispanic

Veteran's Status:   [X] Not a Veteran

**EMERGENCY CONTACT:**
Relationship:   [ ] Friend      [ ] Parent/Step-Parent   [ ] Sibling      [ ] Spouse    [ ] Significant Other
[ ] Child/Step-Child    [ ] Other Family Member (*specify*):        [ ] Other:

Address:

Home Phone:           Work Phone:

**CONSERVATOR:**   [X] No

**CASE MANAGER / COMMUNITY PROVIDER:**

Name: Greater Danbury Mental Health Authority, Honey Samantero     Work #: 203-778-1640

Address: 64 West Street, Danbury, CT  06810   Fax #: 203-778-2720   Page #: 203-593-3778

CAC#: Jail Diversion 203-910-0229

**SOURCES OF INFORMATION:**

Did patient participate in provision of data?   [X] Yes   Reliability: Patient was able to participate both in
the discharge planning and treatment planning
process and was considered fairly reliable.

Family contacted: [X] No      If not, reason: Patient was unable to identify a family member who he
considered appropriate to participate in the provision of data.

**ADDITIONAL SOURCES and COLLATERAL CONTACTS**

Name: Office of Court Evaluations Competency to Stand Trial Report Re; Brett Bolmer

Dated: February 11, 2003      Reliability: Good

Name: Fairfield Hills Hospital Records 10/5/85 to 10/7/85, 2/6/83 (admission), 7/10/81 (admission)

Reliability: Good

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2.  These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains.  A general authorization for the release of information is NOT sufficient for this purpose.

ADMISSION PSYCHOSOCIAL ASSESSMENT, Continued

NAME: BOLMER, BRETT                    MPI: 146031                              PAGE: 2

Precipitants to admission *(Reported by family, community, others)*: Prior to admission patient was living in his apartment in New Milford, CT. Patient was arrested on July 13, 2002, July 14, 2002, and July 21, 2002 (please see legal section of the chart). Patient was not incarcerated, on 1/17/03 there was a competency to stand trial evaluation ordered to be done. On February 4, 2003 the patient was examined by the Office of Court Evaluation for about an hour at the Bridgeport Office of Court Evaluations. In their opinion, the patient was not able to understand the proceedings pending against him or to assist in his defense. On 2/14/03 there was a hearing on the matter and the patient was found not completed to stand trial and committed to CVH for the purpose of being restored to competency.

Patient's view about admission: Upon admission patient was despondent, angry at the complainants, confused and agitated. As patient improved psychiatrically, he became more understanding and accepting of the commitment and now states "Well it's better than going to jail".

Living situation, social and occupational functioning over the past year: Prior to admission, the patient was unemployed, $300 behind in his rent, and his Social Security had been discontinued. It does not appear patient was taking medication or involved in treatment.

Significant stressors over the past year which have contributed to admission:

[X] Problems with primary support group          [X] Economic problems

[ ] Problems related to the social environment    [ ] Problems with access to health care services

[ ] Educational problems                          [X] Problems related to interaction with legal system/crime

[ ] Occupational problems                         [ ] Other psychosocial and environmental problems:

[X] Housing problems

**DEVELOPMENTAL HISTORY**: Childhood and Adolescence

Composition of household / who raised the patient: This patient was born in Danbury, CT. He was the fourth child of Nofer and Lorraine Bolmer. Patient has an older brother David, an older brother Gary, a younger sister Cheryl and a younger brother William. He was raised by his parents, who divorced, in 1973, when the patient was 13.

Family relationships and household atmosphere *(Domestic violence)*: As noted, patient's parents were divorced at age 13. His father, a carpenter, remarried on the day the patient was graduating (which according to collateral sources caused the patient much distress). The patient's mother was a diabetic and/or had a sibling arthritic. Past records indicated that patient's mother "finds coping with her own problems and those of the patient (Brett) and his younger arthritic brother exceedingly difficult". Brett indicated that his mother drank.

Family history of psychiatric/substance abuse problems: As noted above, past records indicate patient's mother may have abused alcohol.

Physical abuse, sexual abuse, neglect or trauma history: Patient denies, but as noted elsewhere, during patient's adolescence patient's father was not in the home and patient's mother had significant difficulties of her own.

Department of Children and Families involvement: [X] No

Ethnic, cultural, and spiritual influences: Patient was raised a Roman Catholic but did not note this as significant.

Language barriers to participation in treatment: [X] No

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

ADMISSION PSYCHOSOCIAL ASSESSMENT, Continued

NAME: BOLMER, BRETT                    MPI: 146031                           PAGE: 3

## EDUCATIONAL HISTORY

Educational Level (*Highest Level Completed*):
   [X] 12 Years High School Graduate/GED

Special classes (advanced or remedial):  Learning disabilities: No special classes noted.

Social and behavioral adjustment to school: None known to this writer.  Patient denies difficulties in school.

Educational barriers to participation in treatment:  [X] No

## ADULT PSYCHOSOCIAL FUNCTIONING:

Relationship with family of origin: Relationship is strained.  Patient's brother, David, is complainant in one of the charges against Brett.

Sexual orientation/gender identity; marital/significant other relationships: Patient is single and heterosexual. Past records indicated interpersonal relationships can be a significant course of stress, anger, and depression for the patient.  Patient does not identify a current girlfriend.

Relationship with children (*Include names, ages, gender*): Patient does not have children.

Other sources of emotional support: Patient has limited sources of emotional support.  Patient has a dog (currently with a friend) who the patient say s is important to him.

Any physical or sexual abuse between adults or with children: (*Describe*): Patient denies.

Ethnic, cultural, and spiritual identity and practices (*Include impact on treatment*): Patient does not identify any ethnic, cultural or spiritual issues that currently have an impact on treatment.

Occupational, vocational and military history: Patient has a spotty work history and does not appear to be able to hold a job for a long period of time.  By the age of 24 he told an interviewer (in collateral sources) he had "30" jobs.  Patient was previously on SSD but says he got off it because he "started his own business".

Pattern of daily functioning and use of leisure time: Patient may have difficulty organizing his day when not on his medication.

**FINANCES** (*List amount, status and policy numbers as applicable*):

SAGA:        Employment:      Title XIX:      Private Insurance:

SSI:         Medicare Part A/B:         SSD/A:      Voc. Program:

Payee:       Aid from family:

Funeral/Burial Plan  [  ] No  [  ] Yes Funeral Home:        City:

Other Assets and Savings: Patient has no assets.  Was on SAGA and had a Connections Medical Card.

## LEGAL HISTORY        Age of first arrest: 20

Past legal involvement (*Include dates, charges, incarcerations*): Patient had had past legal involvement, not all records available at this time.  However, the records available show patient has been arrested for Reckless Endangerment (two counts).  His first arrest was at approximately age 20 for Criminal Mischief, he received a suspended sentence.

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2.  These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains.  A general authorization for the release of information is NOT sufficient for this purpose.

ADMISSION PSYCHOSOCIAL ASSESSMENT, Continued

NAME: BOLMER, BRETT                    MPI: 146031                                        PAGE: 4

History of disciplinary problems during incarcerations: Patient was not incarcerated prior to this admission.

Current charges, court dates, and/or probation or parole status, Bond, Secret Service Hold and details: The patient has a number of charges. On July 13, 2002 it is alleged that he broke into the house of an acquaintance, apparently in an effort to collect money from one of the residents. He allegedly threatened to kill one of the other occupants and her roommate. He is charged with Burglary III and Threatening II from this incident. On July 14, 2002 it is alleged Mr. Bolmer phoned the same house and left a message that caused the occupants to be concerned for their safety. He is charged with Harassment II stemming from this incident. A week later on July 21, 2002 it is alleged that Mr. Bolmer had a dispute with his brother, David. David reported to the police that Brett attempted to hit him. From this incident the patient is charged with Disorderly Conduct. The patient is represented by Jim Longwell of the Bantam Superior Court. Therapeutic is a hearing scheduled on this matter on April 15, 2003.

### GLOBAL ASSESSMENT OF FUNCTIONING

| AXIS V:<br>Current GAF<br><br>51<br><br>Highest GAF<br>Past Year<br><br>0 | **Global Assessment of Functioning**<br>100-91 Superior functioning<br>90-81 Absent; minimal symptoms<br>80-71 Symptoms transient; slight impairment<br>70-61 Mild symptoms; some difficulty in functioning<br>60-51 Moderate symptoms; some difficulty in functioning<br>50-41 Serious symptoms; any serious impairment in functioning<br>40-31 Some impairment in reality testing/communication; major impairment in several areas | 30-21 Behavior influenced by delusions/hallucinations; serious impairment in communication; judgment or inability to function almost all areas<br>20-11 Some danger of hurting self or other, occasionally fails to maintain hygiene, gross impairment in communication<br>10-1 Danger of severely hurting self or others; inability to maintain minimal hygiene; serious suicidal act<br>0 Inadequate information |
| --- | --- | --- |

### SUBSTANCE ABUSE HISTORY

| Substance | | Age of Onset | | Pattern, Amount, Method of Use | | Last Date | | Use Amount |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Alcohol | | 15 | | | | | | |

Current primary drug(s) of choice:

Previous involvement in 12-step groups: Patient has attended AA.

### PREVIOUS TREATMENT

**Detox**:     Number of times:          Where:

### Treatment Programs (Inpatient and Outpatient)

| Facility Name & Location | | Dates From/To | | Inpatient or Outpatient | | Type of Discharge |
| --- | --- | --- | --- | --- | --- | --- |
| "Alcohol Program in Fairfield House" | | 02/16/82 | | | | Left to go back to inpatien psychiatric unit due to agitation |

Longest periods of abstinence (*Dates and substance*): Patient denies alcohol is currently a problem for him.

Any known pattern to relapse:

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes. Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

ADMISSION PSYCHOSOCIAL ASSESSMENT, Continued

NAME: BOLMER, BRETT                 MPI: 146031                              PAGE: 5

## PSYCHIATRIC HISTORY

First contact with mental health system (*Age, precipitants, diagnosis*): Patient was first hospitalized at Fairfield Hills Hospital on July 10, 1981. Evidently patient called the Danbury Police Station saying he was going to kill himself. He stated at that time he was depressed because his girlfriend was cheating on him Patient was diagnosed with Adjustment Disorder with depressed mood.

History of treatment in community/hospitals/placements (*Dates, places, behaviors*): After the admission noted above, patient was re-admitted to Fairfield Hospital on 2/6/82. It was noted that he admitted himself voluntarily, he had broken up with his girlfriend, allegedly went into the girlfriend's home and wrote on her walls. He was taken into police custody and was taken to Fairfield Hills Hospital. Patient's final diagnosis was Axis I: Intermittently Explosive Disorder and Alcohol Abuse. Charges had been brought against him and he was discharged to police custody. Patient was again admitted to Fairfield Hills Hospital in 10/15/85 and discharged 10/7/85. Patient has also had psychiatric admission to Danbury Hospital and has been involved in the Jail Diversion Program.

Successful interventions

Patient's viewpoint: Initially patient was resistive to medication but now feels it helps.

Family/community's viewpoint: Patient's family and community providers are not currently involved.

Past sign/symptoms of decompensation: Patient can become agitated, threatening, speak rapidly and expresses suicidal ideation.

## CURRENT TREATMENT ISSUES

Patient's perception of strengths, treatment needs, and goals: Patient seems himself as a "good guy", his goal is to discharge back to the community and obtain a place to live.

Family/Community's view of patient's strengths, treatment needs and their degree of support and involvement: Patient's family not involved. Lead agency is due up this week to begin the discharge planning process with them (Danbury Mental Health).

## CURRENT MEDICAL ISSUES

Current medical issues effecting treatment planning: No acute problems. Patient is diabetic, will need aftercare for this.

## HIGH RISK ISSUES

High risk issues: Patient admitted with a charge of attempted assaultive behavior towards a family member. In the past, patient has expressed suicidal ideations.

SOCIAL WORK ASSESSMENT: This patient is a 42 year old single, Caucasian unemployed male admitted to CVH for the purpose of restoration to competency on multiple charges. Patient has a long history of multiple psychiatric admission, alcohol abuse (although patient currently states he doesn't drink) and difficulties with the law. Upon admission patient had pressured, rapid, disjointed speech, emotional dyscontrol, ("hysterical"), tearful, angry, despondent, paranoid and did not attend to his personal appearance. Patient was started on a course of treatment and incrementally improved becoming calmer, able to communicate more clearly and attend to his appearance.

Currently patient is homeless, without funds, appears to be "at odds" with a family member. Patient has a history of difficulty maintaining himself appropriately in the community. Patient will need a high level of support, psychiatric aftercare and may need residential services.

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes. Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

ADMISSION PSYCHOSOCIAL ASSESSMENT, Continued

NAME: BOLMER, BRETT                  MPI: 146031                           PAGE: 6

**SOCIAL WORK TREATMENT GOALS:** The first social work goal is to help the patient understand the nature of his commitment i.e.: the importance of understanding the proceedings against him and cooperating with his attorney in his defense.  The second social work goal is to help the patient accept the need for treatment both here and when discharged.  The last social work goal is to help the patient develop an appropriate discharge plan and access community resources.

**RECOMMENDED DISCHARGE PLAN:** Patient could benefit from respite care with ACT team level of case management.  He will initially need SAGA medical assistance and should pursue re-obtaining his Social Security benefits.

**PATIENT'S VIEWPOINT** (*Regarding discharge plan*): Patient is cooperative with discharge planning, is concerned about his "homeless" status and hopes for help.


_____

Kathy O'Neil, PSWA
03/18/03

KO/kff

𝓁

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2.  These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains.  A general authorization for the release of information is NOT sufficient for this purpose.

**Defendants' Exhibit J**
**Department of Mental Health and Addiction Services**
**Competence to Stand Trial Evaluation and Report, Brett Bolmer 4/4/2003.**



# STATE OF CONNECTICUT
## *DEPARTMENT OF MENTAL HEALTH AND ADDICTION SERVICES*
### CONNECTICUT VALLEY HOSPITAL

April 4, 2003

Mr. Eric Groody
Court Clerk
Superior Court, GA 18
80 Doyle Road
P. O. Box 667
Bantam, CT 06750

## Competence to Stand Trial Evaluation and Report

|  |  |
|---|---|
| Re: | Bolmer, Brett |
| DOB: | June 17, 1960 |
| Docket #s: | CR02-108512, |
|  | CR02-108511, and |
|  | CR02-108491 |

Dear Mr. Groody:

On February 14, 2003, the referenced defendant was found not competent to stand trial in accordance with Connecticut General Statutes, Section 54-56-d. He was remanded to the custody of the Department of Mental Health and Addiction Services for a period of sixty days to be restored to competency to stand trial. He was admitted to the Competency Restoration Service of Connecticut Valley Hospital on the same day.

On March 31, 2003, and again on April 3, 2003, the undersigned author formally examined Mr. Bolmer to determine if he had been restored to competency. In addition to information elicited from the defendant himself, the authors also reviewed the Connecticut Valley Hospital inpatient record, the Competency Evaluation Report prepared by the Bridgeport Office of Court Evaluations and dated February 11, 2003, and Mr. Bolmer's outpatient medical record from Danbury Hospital for the period from August 1998 to May 2001.

**Phone: (860) 262-5000**

**P.O. Box 351 SILVER STREET, MIDDLETOWN, CT 06457**

**An Equal Opportunity Employer**

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required by law. None of this confidential information or these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

## CHARGES

Mr. Bolmer is before the Court with charges in various cases that include Burglary in the Third Degree, a Class D Felony; Threatening in the Second Degree, a Class A Misdemeanor; Harassment in the Second Degree, a Class C Misdemeanor; and Disorderly Conduct, a Class C Misdemeanor.

## FINDINGS

It is the unanimous opinion of the undersigned Competency Monitor and the treatment team of the Connecticut Valley Hospital Competency Restoration Program that Mr. Bolmer has demonstrated a factual and rational understanding of his charges and of the proceedings pending against him. It is our further opinion that he has demonstrated the capacity to collaborate with his attorney in his own defense.

## CONFIDENTIALITY

At the outset of each interview the evaluator informed Mr. Bolmer that a report would be sent to the court regarding his competency to proceed with his case, and that testimony might be required with regard to that report. He was further informed that information related to his mental condition would not be treated as confidential in court reports and testimony. Mr. Bolmer indicated his understanding of this provision.

## PERSONAL BACKGROUND AND CLINICAL HISTORY

Mr. Bolmer is a 42-year-old single, white male who was raised in Connecticut by his parents, who divorced in 1973 when he was thirteen. His mother is deceased; he has limited contact with his father, who remarried. Mr. Bolmer has two older and two younger siblings, but has strained relationships with all but one brother. He never married, and he denies having children. He has a long history of mental illness, with psychiatric admissions to the state's Fairfield Hills Hospital in 1981, 1982, and 1985; and an admission to Danbury Hospital after that. At least one of those hospital admissions was related to depression with suicidal feelings; another was due to a suicide attempt by overdosing on his medications; and others were also precipitated by alcohol abuse. He has a history of previous arrests and court proceedings in which his competence was not questioned.

Mr. Bolmer has a twelfth-grade education. Although he reports a history of alcohol abuse, he denies recent alcohol use. He reported having some work history early in his adult life prior to being granted Social Security Disability. However, he reports that recently he forewent his disability in favor of operating his own business doing odd jobs and landscaping and selling knickknacks. He recently became homeless after a dispute



NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

with his brother, with whom he had reportedly purchased a house and to whom he later sold his interest in the house. He then stayed with friends and also slept in his truck.

Mr. Bolmer suffers from hypothyroidism and from diabetes mellitus. While in the community prior to his hospitalization he did not manage his diabetes. These two medical conditions notwithstanding, Mr. Bolmer tends to be distressed by an irrational preoccupation with having serious disease based on his own misinterpretation of bodily symptoms and on his perception of himself as a victim.

## COURSE OF HOSPITAL TREATMENT

Upon his admission to the hospital, Mr. Bolmer presented himself as angry over his legal situation and his hospitalization. He initially refused meals and medications and was prone to crying jags. He was sure he would die of an illness, and mentioned at least two such illnesses from which, laboratory testing subsequently revealed, he did not suffer. He refused showers and would not change his socks. He asserted irrational notions about conspiracies between the state in general, the police, and his alleged victims. Once he became more clinically stable, he was assaulted by a peer and again refused medications, directly stating his preference to die from diabetes. He was irritable and made frequent complaints of aches, pains, and illnesses.

To address his irrational thinking and his emotional volatility, his treating psychiatrist prescribed the anti-psychotic medication risperidone. He took it briefly and showed a good response with improved emotional stability and improved concentration. However, soon he complained that the medication made him "blind" which, although exaggerated, was identified by an optometrist to be more likely normal vision changes associated with age and or a result of uncontrolled diabetes. Since then Mr. Bolmer refused to take any further psychotropic medication. In contrast to his poor self-care prior to his hospital admission and his refusal of psychotropic medication, Mr. Bolmer cooperated with his medication for his hypothyroidism and diabetes mellitus as well as with regular checks of his blood sugar and, when necessary, injections of insulin.

Even at the time of his admission to the hospital, Mr. Bolmer had good baseline knowledge of his charges and of how cases are processed. He was receptive to new information. For example, he initially questioned whether a charge of Burglary could be prosecuted successfully even if the defendant did not "rob any place." After reviewing a copy of the relevant state statue, he indicated his ability to accommodate new information.

Despite Mr. Bolmer's good baseline understanding of his case, he was very emotional and melodramatic, and this raised concerns over whether he would be able to collaborate with his attorney in his own defense. For example, he initially indicated that he would prefer to go to prison so that he could "become a millionaire" by later suing over a false arrest. However, over the course of his inpatient stay he was able to gradually become more emotionally stable and to think more rationally about the possible outcomes of his

3

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes. Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

case and to demonstrate reasonable thinking with regards to how he would make decisions about how to resolve his case. Throughout the restoration-to-competence phase of his hospitalization, Mr. Bolmer consistently cooperated with individual instruction for competency restoration and with periodic evaluations. He did not exhibit evidence of feigning mental disability, malingering, or of suppressing his abilities to avoid proceeding with his case.

## CURRENT DIAGNOSIS

| | | |
|---|---|---|
| **Axis I:** | 296.6 | Bipolar I Disorder, Most Recent Episode Mixed |
| | 300.7 | Hypochondriasis |
| | | History of Alcohol Abuse |
| **Axis II:** | | Histrionic Personality Traits |
| **Axis III:** | | Diabetes Mellitus, Type II |
| | | Autoimmune System-Induced Hypothyroidism |
| **Axis IV:** | | Homelessness, Unemployment, Problems With Primary Support Group, and Interaction with the Legal System |
| **Axis V:** | GAF = 65 | (Current) |
| | GAF = 65 | (Highest in the Past Year) |

## PRESENT MEDICATIONS

Mr. Bolmer is currently prescribed, but does not agree to take, the following psychotropic medication:

Risperidone, 0.5 mg taken orally, at 8:00 a.m. and 1.5 mg at 8:00 p.m.

He is also prescribed (and complies with) the following medications for medical problems:

Glucophage, 1500 mg taken orally at 8:00 a.m. and 1000 mg taken orally at 4:00 p.m. as an antihyperglycemic agent;
Glucotrol XL, 10 mg taken orally at 8:00 a.m. as an antihyperglycemic agent;
Synthroid, 175 mcg taken orally at 6:00 a.m.;
Aspirin, 81 mg taken orally once per day; and
Eucerin Cream, applied to both feet twice per day.

## CURRENT MENTAL STATUS

During a mental status examination that was conducted on April 3, 2003, Mr. Bolmer presented as a large-framed white male who was casually dressed and demonstrated good hygiene. Although he had been sleeping, he cooperated with the



NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

examination and offered no protest. When asked to describe his mood (experienced emotional state), he stated, "I'm a victim; I've lost thousands of dollars." When redirected to express a feeling, he persisted, "I'm a righteous guy;" and "Railroaded." When asked a fourth time to express a feeling, he stated, "Disgusted." His affect (observed emotional state) was angry and labile, consistent with his description of feeling "disgusted," and had a broad range from the verge of sobbing to irritable. His voice was melodramatic. He denied experiencing auditory or visual hallucinations at the time of the interview, and denied ever having "heard voices." He denied having paranoid thoughts and, despite his self-portrayal as a victim, no delusions or thought distortions were elicited during the examination. He denied having desire or plans to harm himself or others. He was alert and oriented to person, place, and time. In a test of registration and working memory he was able to repeat three out of three items immediately and to recall all three after five minutes.

Mr. Bolmer's thinking was rational and goal-directed. There was no evidence of thought blocking, obsessions (unwanted thoughts), or thought derailment. He spoke of his plans to initiate various lawsuits against a variety of groups and individuals once his current charges are resolved. He was able to recall and explain current events including the war and SARS. His concentration, or the ability to sustain attention over time, was rated as good. He was able to interpret a familiar speech idiom in a way that gave evidence of his capacity for abstract thinking, although his interpretation of a proverb was concrete. His insight was rated to be poor with regard to his emotional problems; and his judgment, which refers to making decisions when faced with hypothetical situations, was rated to be fair.

## UNDERSTANDING OF THE PROCEEDINGS

When asked about the circumstances leading to his arrest, Mr. Bolmer gave a lucid explanation that was consistent with the record. He recited each of his charges, although he confused his Disorderly Conduct charge with Breach of Peace. Nonetheless, he knew the relative severity of each accusation and the associated maximum prison exposure of each. He indicated his disagreement with, but understanding of, his Burglary charge vis-à-vis the charge not being related to any allegation of robbery or larceny. Mr. Bolmer understood that he must answer his charges in a court of law, where a judge would oversee the process.

Mr. Bolmer understood that the prosecutor's role is to prove to a jury that a defendant is guilty. He understood that prosecutors might do this by calling witnesses. He knew who might be a witness in his case, and he understood that a prosecution witness, such as a victim, would be "against" him. He knew that his lawyer's role is to "defend me," and that his attorney would cross-examine prosecution witnesses and could call witnesses on his behalf. When asked to explain the role of a judge, he replied, "To sentence me."

Mr. Bolmer understood that he might have a future opportunity to choose to maintain his innocence and go to trial or to accept a possible negotiated plea. He indicated that one



NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

reason to go to trial would be that if his alleged victims did not attend, the charges might be dropped. However, he understood that the risk of going to trial was that he would "risk getting the full sentence." Mr. Bolmer spoke of his hopefulness that his attorney would arrange a deal in which he could "cop [sic] in order to get probation." He knew that to accept such an agreement he would either have to plead guilty to a crime or to plead "no lo contende [sic]." He knew that the latter plea could result in being sentenced, and that it would require that he give up his right to a trial.

Mr. Bolmer understood that if he were to plead guilty or to be found guilty after a trial, a judge would determine a lawful sentence. He knew his maximum prison exposure. He knew the meaning of probation: "I'd have to pee in a cup every week and see a stupid psychiatrist; it's a bunch of bullshit but if I didn't do it I could go to jail for six years." He was able to calculate and explain a suspended sentence. Finally, when asked about proper decorum and deportment in the courtroom, Mr. Bolmer indicated that he had had previous court experiences in which his behavior had been appropriate and that he understood what behavior is expected of defendants.


## ABILITY TO ASSIST IN HIS DEFENSE

Mr. Bolmer was able to name his next court date and to correctly identify his attorney by his first and last names. He understood that the attorney's role would be to defend him and "to try to keep me out of jail." He understood that he would be able to help his attorney by accepting his legal advice. Mr. Bolmer said that he would be able to tell his attorney "my side of the story," and that his attorney would not use this information against him.

Mr. Bolmer described his attorney as someone who "negotiates with the D. A. [sic]." When asked what the two would negotiate, he explained that defendants can "agree to a deal in order to get the case over with and not get the maximum penalty." Mr. Bolmer demonstrated an ability to think rationally when considering hypothetical negotiated pleas. He rejected a hypothetical plea that was the same as his maximum penal exposure. He understood that he would not be obliged to accept a plea offer, and he expressed his confidence that his attorney would give him good advice about what to do.

Regarding his ability to maintain his competence over time, the restoration team has noted that Mr. Bolmer is now clinically stable despite his refusal to take prescribed psychotropic medications. However, the nature of Bipolar illness is to be cyclical, and Mr. Bolmer's mental condition can be affected by his current non-compliance with his psychiatric medication or his possible future non-compliance with his medication that controls his diabetes and hypothyroidism. Therefore, predictions about his competence in the long-term are limited by Mr. Bolmer's treatment compliance.

6

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.

Competency Evaluation and Report
Brett Bolmer

Page 7 of 7
April 4, 2003

## CONCLUSION

It is the unanimous opinion of the undersigned Competency Monitor and the treatment team at Connecticut Valley Hospital's Competency Restoration Unit that Mr. Bolmer understands the charges pending against him and that he understands how a case is processed in Court. He is clinically stable, and he is able to behave appropriately in the courtroom. Mr. Bolmer has an appreciation of his current legal situation, his options for resolving his case, and the range of penalties he faces. It is our further opinion that Mr. Bolmer is able to work with his attorney in his own defense. Despite his emotional variability, he is able to concentrate on what is said to him, to think rationally, and to consider his attorney's advice when making decisions about his case.

In the event that the Court finds that Mr. Bolmer is competent and remands him to the custody of the Connecticut Department of Corrections, the hospital recommends that he continue to receive his medical and mental health treatment there. To that end, the hospital will forward to the Department of Corrections the clinical information needed to help ensure the continuity of his care.

In the event that the Court finds that Mr. Bolmer is competent and releases him from custody, the following discharge plan is in place. Mr. Bolmer will receive clinical aftercare services through the Greater Danbury Mental Health Authority, including crisis, case management, and outreach services. He has been referred to the Transitional Residence program there as well, pending bed availability. In the event that a bed is not available at the time of his release, a staff person of the Greater Danbury Mental Health Authority will assist Mr. Bolmer in finding a temporary, single-room occupancy situation while awaiting space in the transitional living facility.

Respectfully submitted,

Robert O. Chase, M.S.W., LCSW
Competency Monitor
Connecticut Valley Hospital

Craig Burns, M.D.
Treating Psychiatrist
Connecticut Valley Hospital

RC/rc

pc:    Prosecutor
       Public Defender

NOTE: Confidentiality of psychiatric, drug and/or alcohol abuse and HIV records is required and no information from these specific records shall be transmitted to anyone else without written consent or authorization as provided under Connecticut General Statutes, Chapters 899c and 368x and Federal Regulations 42 CFR 2. These laws prohibit you from making any further disclosure without specific written consent of the person to whom it pertains. A general authorization for the release of information is NOT sufficient for this purpose.